Good morning. May it please the court, Barry Himmelstein for Plaintiffs and Appellants. I'll be reserving several minutes for a rebuttal. I guess we'll see how much. Just to get to the heart of the matter, plaintiffs do not claim that defendants claim the testifant has been clinically proven to increase the claim is false, because it has not in fact been clinically proven. In preparing for this argument, I of course reviewed the cases cited in the brief. There's one in particular I'd like to call the court's attention to, Cabral v. Supple. That was a case involving, just like this case, claims under the California Consumer Legal Remedies Act, unfair competition law, false advertising law. On appeal, on June 23, 2015, this court, the Ninth Circuit, said something that goes to the heart of the matter, and that's at 608 Federal Appendix 482. That's not a precedential decision. I know, but I think there's a lot that backs it up that we'll get to. The court said, quote, advertisements that did not declare the beverage to be, quote, clinically proven effective in treating joint pain, unquote, are a far cry from advertisements that did. This distinction between so-called establishment and non-establishment claims is well recognized in both federal and California case law. Can I ask you a question about this? Judge Reel didn't base his decision on this distinction, did he? Your opponents on appeal and below argued it, but I don't was it was the decision below based on the distinction between substantiation and challenge to falsity? I don't see the court drew any such distinction. The meat of That's what I'm asking. The argument that your opponents raised on appeal was raised below, but not considered by the district judge in his order of dismissal. Am I correct? That's correct. The decision dismissing the claims on that basis is all of two paragraphs long. And that's the judge's dealing with the, I'll mispronounce the name, the correction, the Bonferroni correction? Correct. Okay. So this is an issue never addressed below. If I could ask you to switch a little bit. The district judge dismisses a whole variety of claims for a whole variety of reasons. And I'd like you to focus on just a couple of them. With respect to the sole remaining defendant, the district judge said you hadn't pleaded alter ego with sufficient plausible facts. Tell me why you think the complaint pleads alter ego with respect to that defendant. The words are used, but there's nothing there that suggests that he has used the corporation as a shield or improperly. He's the CEO and directs the corporation. What else did he allege that would establish alter ego? Well, perhaps not enough for alter ego, but we have cited, if you see in our reply brief, numerous California decisions which will hold a principle of the corporation liable that controls the day-to-day activities. I'm asking about the alter ego allegations, whether you've made other ones in this complaint. I will concede that we have not established alter ego. If we had discovery, it's a very closely held corporation. Well, but you need to plead a cause of action before discovery, and you need to plead it with sufficient plausibility that the district judge can find that it's plausible under ICPAL. And so you concede that you didn't plead a plausible case of alter ego here. I will concede that, but we pled other bases for liability. Under California case law, a principle of a corporation can be held directly liable under 17-200, the unfair competition law. Tell me where in your complaint you allege that he was directly liable. I don't find that. Okay. Maybe missing. And perhaps you can deal with that when you get back up. Yes, I do believe we allege that he dominated and controlled the corporation. Yeah, and that's an alter ego allegation. Yes, but it's also a basis for liability under California case law outside of alter ego. And we've cited those cases in our reply brief. Did you make that argument to the district judge in response to the motion to dismiss? All I see in the motion to dismiss response is that we pleaded alter ego. No, we did cite a couple. We didn't give you the entirety of our briefs. I was trying to not put in parts I didn't have to. But we did argue below that under a number of cases, indeed involving nutritional supplements, that presidents of these companies have been held liable where it was shown that they knew that the representations were false and they were allowing them to continue. So did you allege in your complaint that he personally knew the representation was false and you based that on what? He got November 13th, 2013, he and the company got Professor Jewell's unredacted report saying in no uncertain terms this is false. Six months later, they're still selling the product as clinically proven when they know it's not. How do they know it's not? They got a report that your expert put together. Which they couldn't even refute. Why do we know they couldn't refute it? Well... How does this record establish that they couldn't refute it? It's alleged, you know, that there was no response to it. Of course not. Why would you respond to a letter from somebody who says they want to sue you? Well, I can't get into the discussions we were having outside the record, obviously. But, you know, there was back and forth and we were expecting a response and we didn't get one. Let me ask you about your RICO claims. I find disturbing in cases like this that somebody alleges a criminal enterprise. All I can see in the complaint is that they did a trial, their statistician told them it was, the people who conducted it told them it was statistically significant. No. Well... There's no evidence in the record. There's no evidence in the record, but there was a trial that they alleged was statistically significant. It may not have been. But what's the evidence of a criminal enterprise between GenCorp, these various distributors, and the retailer? Is there any evidence that these people got... They're not in criminal businesses. What's the evidence... I understand you've got a fraud claim and I understand you've got a California state law claim. But the district judge said, I don't see any allegations here of criminality or predicate offense for RICO. Wasn't he clearly correct about that? If six months after you know you're selling something under false pretenses, you continue to do so and generate new advertisements, you know, saying the false pretenses, I think at that point you've crossed the line. So that establishes an enterprise between the manufacturer, the manufacturer of the herb, if you will, the people who put the product together, and the retailer. That establishes a criminal enterprise because you've put them on notice that you believe that it's wrong? Well, look, under the Consumer Legal Remedies Act, you've got 30 days to stop a fraudulent act when you're told you're doing it if in fact you are. But you're alleging a federal crime in this complaint. You're saying that these people committed a federal crime. And I'm trying to find sufficient allegations here that they committed mail fraud and wire fraud, which would subject them to fairly long individuals, penalties in jail. Obviously we pursue this civilly, not criminally. But if you're selling something, millions of dollars of a product under false pretenses, and you know you're selling it under false pretenses, what more do you need? So that's a question of fact. At what point are they charged with knowledge? Well, no, you have a 9B obligation when alleging RICO to set forth facts that show... GNC's own website said... Let me finish here. Okay. More probable than not that there's a criminal enterprise going on here. You may have alleged sufficient facts to show that GenCorp was engaged in some sort of fraud. That's a separate issue. I'm asking what facts do you have to show that there was a criminal enterprise among all these people? That they had gotten together and agreed to conduct criminal activity? It was the continuation of the business after all the participants... Anything else alleged other than the continuation after notice that would show a RICO criminal enterprise? No. Okay. That is the heart of it. That once all three... GenCorp, GNC from even before they got it had on their website three levels deep. By the way, this really isn't clinically proven. With respect to the very products at issue, they knew it all along. GenCorp and Direct Digital were given, you know, this report. It's math. Okay. This isn't the kind of... People don't understand... A lot of people don't understand modern medicine boils down to math. If you have P less than .05, something's proven. If you can't, it's not. If you go to the FDA and try and get approval for something where you've got P less than .06, they laugh you out. You know, you won't even file the application. This is math. It's not... Let me just tell you, I think you probably have stated a claim under state law for... I'm focusing now on what I regard as a very serious allegation in your complaint, which is that these defendants engaged in a criminal enterprise, which would have subjected them, had they been charged under federal law, to penalties for mail fraud and wire fraud. And if all you've got on that is that you told them that their survey was wrong and they each individually continued to sell the product, I'm not sure I see an enterprise out of that. Remember, it has to be an enterprise. It doesn't have to be individual wrongdoing. It has to be an enterprise. Okay. Well, under the Supreme Court's decision in... Boyle v. U.S., an enterprise has to have just three requirements. I mean, assuming they all knew what they were doing was wrong at that point, the enterprise has to have a purpose. What's the purpose? To sell these products. It has to have relationships among those associated with the enterprise. Clearly they did. You have GenCorp furnishing the means, if you will, which is a classic, you know, element of fraud. You have the manufacturers such as Direct Digital formulating the product. And you have GenC that knew all along this stuff wasn't clinically proven. Selling it is clinically proven, all for their common financial benefit. If it was snake oil, you probably wouldn't have... The court probably wouldn't have a problem with the allegation that it's a RICO enterprise. It's only because it's something... It's a more sophisticated version of snake oil. But those are questions of fact. You wanted to save some time for rebuttal. I did. Thank you. Judge Gould has a question for you, though. Before you sit down, I would like you to talk about your warranty claims. Yes, Your Honor. The only... Well, Judge Reel dismissed them because he found that we had not sufficiently alleged... What is it? Reliance, causation, and injury, which I think was the We clearly have, and the defendants in all of their briefs don't even try and defend that holding by the district court. They don't... You know, we clearly did, and we've set this forth in our brief, allege that they bought it based on the reliance of this... That it was clinically proven, the statement. And they were damaged. And the defendants don't even challenge that. The only other basis that the defendants... On appeal is that privity is required for implied warranty claims. And in addition to the cases cited in our brief, we sent on May 31st a Rule 28J letter citing the Zachariah case. And California cases and that case all say where a product is intended for human consumption, you don't need privity. California case law has carved out that exception. Clearly, these were intended for human consumption. Okay. Great. Thank you. Thank you. Because I pushed you over the time you were planning to spend direct argument, I'll ask Judge Hurwitz to give you a little more on rebuttal. I certainly will, Judge.  May it please the court. Dan Silverman, along with my colleague, Judge Hurwitz, and my colleague, Robert Meyerhoff, on behalf of the GNC Defendant Support Factor and Direct Digital. Can I ask you at the beginning? Go ahead. I'm just going to say, so I don't repeat what I did on the last one. Could you at some point address the warranty claims in your argument? Because they're kind of front and center in my mind. Yes, Your Honor. I can address them at the outset. First of all, they've not alleged a manifestation of defect, which will doom that claim. But secondarily, and even more importantly, all the state law claims, including the warranty claims, are doomed because of the lack of substantiation. Assume you lose on that argument for a moment. Address Judge Gould's question. Why should the warranty claims fail if your lack of substantiation fails? Because they've not alleged a manifestation of defect, which is required. So they have to prove privity, and they have to prove a manifestation of defect. I don't understand what the manifestation of defect is. They've alleged, in effect, a warranty of fitness for a particular purpose. They've alleged that you sold them something which was supposed to increase testosterone levels when, in fact, it would not. Assuming that they've alleged that, why isn't that a classic breach of implied warranty for a particular purpose? Because all they've alleged is that the advertising was not substantiated. No, and I've asked you, and let me just start out with this. In my view, they've alleged that the advertising was false. Their complaint says it's false. They've got a report attached to the complaint from a statistician that says it's false. Maybe the worst statistician in the world. But for purposes of my question, assume that what they've alleged is that you've engaged in false advertising. And so my question is, if they have, why isn't there a good breach of warranty claim here? Because that's the question Judge Gould, I think, is asking too. Well, because the issue as to whether a product allegedly works or not is not a defect in the product. If it doesn't work for a particular person, they're not alleging that it can't work or it can't work for anyone. It didn't work for this particular plaintiff. That doesn't make it a defect in the product in and of itself. So if, Judge Gould? Well, what if a product works, but it's not fit for the purpose for which it's advertised or advertised on one side and bought on the other? Well, it's not, the plaintiffs have alleged that it doesn't work for them. So the fact that they took the product, it says it doesn't work, that doesn't make it a defective product or it's not fit for its ordinary purpose. To make it fair, they've alleged that they bought the product because, and God knows why they bought it, but they bought the product because they wanted to increase their testosterone. And what they, and your client advertised that it would. Your clients in the aggregate advertised that it would. And they have discovered that not only doesn't it increase theirs, but the claim that you made that it would was false because it was based on faulty research. Now, assume all that is what they've alleged. Why don't they have a warranty claim under those circumstances? Well, it, two reasons. One, again, I don't believe they've alleged defect. But second of all, there's the privity issue. So address the privity issue. Certainly there's privity with respect to the retailer, is there not? Yes, but the plaintiff, there's privity with the retailers? Sure. They bought, they bought the product from the retailer who made a, who they allege made representations to them about its quality. That is correct. But the main issue, well, I understand you're setting aside the issue of substantiation. Yes. So I'd like to, I really would like to focus on that. You can focus on it, but you're going to have trouble with me on it. So go ahead. Well, fortunately it's a bench of three and I really would like to focus on that issue because. And do you agree that, by the way, the district judge didn't focus on it? Didn't focus on. Did not dismiss this claim for, under your substantiation theory? He did not dismiss it. But as your Honor, as the court knows, that the district court can be affirmed on any ground that's supported by the record. And a lack of, you know, the Berger versus Locolani case. Sure. We all understand. So I understand that the district court didn't focus on the substantiation. It did talk about the Bonferroni correction. Can we spend a moment on the Bonferroni correction before we go on? Isn't that just wrong for a district judge to look at something, go to Wikipedia and say, while this expert report appears to say on its face that these representations are false, I don't think it's a good expert report because I have taken judicial notice of the Bonferroni correction. How can one take judicial notice of something in Wikipedia? Well, because Wikipedia was, in fact, incorporated by reference. It's cited in the complaint. They talk about the Bonferroni correction in the complaint. You can take judicial notice of the fact that it's on Wikipedia, but can you take judicial notice of the accuracy and the conservatism of the Bonferroni correction? Well, the complaint itself addressed the issue of the Bonferroni correction. So you can incorporate by reference websites, just like you can incorporate by reference printed material. The complaint references the Bonferroni correction. And then looking at that Wikipedia page, Judge Real then looked at the Bonferroni correction and determined that just because it said it's the most conservative method. So just because you don't meet the Bonferroni correction doesn't mean that the study is not clinically proven or is not statistically significant. But you have an expert who says, I find that this study is not statistically significant. I find that representations from it are false. That's what the redacted report says. And in doing this, I applied the Bonferroni correction. You didn't have a district judge acting as a statistician saying, well, if you applied the Bonferroni correction, your conclusion must be wrong because that's the most conservative correction. And while I don't know what the other corrections are, I would assume they would produce different results. That just strikes me as silly. A district judge can't do that, can he? Well, the district court certainly can incorporate by reference if it's referenced in the complaint. He can look at the information that's incorporated by reference. But setting aside whether he was within bounds or out of bounds in terms of taking the step as to whether it's the most conservative method, the mere fact that there was a study and the study said it was clinically proven and the study said it was statistically significant by definition makes this a barred lack of substantiation. I want to focus on that because I've suggested I have problems with it. You put out a study. You put out a thing that says we have a study that increases free testosterone levels and it's been clinically shown in a statistically significant study or something like that. And the other side has an expert and he looks at it and says this is a bogus study. It's not true. The representations you're making are not true. He's not asking you to substantiate them. He's saying I can prove their falsity. Why is that a substantiation case? Because he's not proving their falsity. He's questioning and criticizing the statistical method of that study. Now, he's saying your representations are false. The complaint plainly says that. It says the representation is false. It alleges it in a conclusory fashion. But when you look at that report by that pre-litigation litigation expert... That says it's false also. But he's questioning the statistical method. And if you look at... My question is why isn't this an issue either for summary judgment or is it an issue of fact? They've alleged in the complaint that your report is false. They've attached a report by somebody who purports to be an expert. For all I know, they found them on the street who says it's false. The district judge at that point can't say they have an alleged falsity. Can he? Well, there's been a number of cases that are on point with this case that said the answer is yes, it can be dismissed and a motion is dismissed. Most recently, quite frankly, three virtually identical allegations involving Testofen, the district court in Massachusetts, granted the defendant's motion to dismiss involving the same allegations, the same products, and almost all the same defendants. And the same expert report. Same expert report. Everything was the same. In fact, Judge Zobel, on May 16th, issued a ruling saying the bulk of plaintiff's allegations argue not that science has shown the falsity of defendant's statements, but that science doesn't sufficiently demonstrate their truth. Interpreted California law? What's that? Yes. California law. And she says, questioning the validity and sufficiency of research is the very definition of substantiation claim, and therefore, plaintiff's claims fail. And then Judge Zobel went on further to say that that lack of substantiation also undermines all the state law claims, including the warranty claims which were alleged in that case. Was the Massachusetts case, I had forgotten. On a motion to dismiss or summary judgment? Motion to dismiss. And she dismissed it without leave. Original complaint without leave, just like Judge Real did. Now, granted, she had a more detailed opinion supporting it than Judge Real did, but again. Judge Real didn't make this determination at all. Judge Real didn't focus on the lack of substantiation, but again, it can be affirmed on any grounds. But we submitted, on May 17th, we submitted Judge Zobel's opinion, and it's a lengthy opinion and goes into great detail about lack of substantiation and the warranty claims and everything else. So I would urge the court to, you know, look, quite frankly, look more at Judge Zobel's opinion, which talks about California law and the California consumer protection statutes, and that says this is a quintessential textbook lack of substantiation case that dooms all the state law claims. Why don't we give Judge Real the first shot at that? Why did we give Judge Real? Why don't we give Judge Real the first shot at that? If we think you're right, and, you know, if we have to reverse for other reasons, why shouldn't we say to Judge Real, this is without prejudice to you considering their lack of substantiation argument that you didn't address in the first place? Well, I mean, obviously... We're not required to... Obviously the court can do that, but I think it's a, in terms of judicial resources and judicial economy, the, you know, obviously I cannot predict how Judge Real, if the matter is remanded, will rule, but I feel fairly confident, given his opinion the first time, and now he has support from a colleague in Massachusetts that ruled in great detail on the issue, he will probably, again, I don't want to read his mind, but I would venture to guess that his opinion would be the same. And quite frankly, I think any district court judge's opinion would be the same. I mean, there's an opinion that just... So what would they have to do, in this case, in your view, to plausibly plead falsity? They would have to have studies of their own that show falsity. In fact, in this case, they cite four studies, none of which are, all of which are distinguishable, three of them were on a completely different ingredient, two were proprietary ingredients that had different formulations, and the fourth one, which was on testophen, was on, was not testing free testosterone, but was actually testing the effect on male libido. So they could have done a study, and they relied upon a study, on testophen, on what effect it has on free testosterone. They did not do that. Instead, they have one study of testophen that's on a different issue, and three studies that are on a completely different ingredient, and... Is there a representation, I've forgotten, in the advertising that a clinical study has shown statistically significant results? Is there a what? Isn't there a representation in this case that a clinical study has shown statistically significant results? Yes. It's clinically proven, and... Well, no, stop for a second. So you allege that, you have a study that you purport says that. They have a statistician look at it and say, this study does not produce statistically significant results. Why isn't that a direct allegation of falsity? That's what I'm having difficulty with. The mere fact... The court, for example, in Greifenstein, Estee Lauder, in 2013 said, the mere existence of a study alone defeats plaintiff's arguments that the wrinkle repair claims lack substantiation. The mere fact that there is a study alone... But in this case, we go one step further. Not only do we have a study, which plaintiffs with appellants concede, but we have a study that purports to prove what the does, in fact, increase free testosterone. So we go two steps. But there's a whole... But their expert, let's assume for a second, their expert accepts all the facts in your study. They don't need a new study. He thinks every fact that your study proves is correct, but the significance of those facts is misstated. That's false... That's false advertising, isn't  That's false... No, that would be false advertising if we were in an FTC context, but that's not false advertising in the context of a consumer protection case, there's a distinction. You can have a lack of substantiation case if you're in the FTC, but you can't have one. The King Bio case goes into all the... We agree. We agree. A private party can't bring a lack of substantiation. I'm trying to figure out, and we'll give you enough time. I'm trying to figure out why this is... This is why I'm having a difficulty. A lack of substantiation case. So I'm going to give you a hypothetical, and please don't change it on me, because once you change it, it becomes useless. But let's just... Let's assume that your study says we gave free testosterone, we gave this herb, fungicide, whatever it's called, to ten people, and then we tested them afterwards, and each of them had more testosterone than they did before. And therefore, we represent that there's a clinical trial that shows statistically significant increases in free testosterone. Et cetera. And they hired an expert that said, testing ten people can never produce statistically significant results. Therefore, your advertising is false and misleading. Are you saying they couldn't sue? No. Not in a... The FTC could proceed, but no, they cannot. And here's why. They... Why would they want to... Under those circumstances... They would have to have their own study. Okay, but they're saying, we'll... Why would we need to conduct our own study? We'll assume that the ten people we gave it to would have exactly the same reactions as these other ten. We'll accept their clinical research as true, but the conclusion that's being given to the public from that research is false and misleading. Why can't they allege that? Because the mere fact that there is a study... I mean, look, for example, the Stanley versus Bayer case. Plaintiffs argue that the scientific support for claims should have been stronger. It's similar to your hypothetical. The court found this is by plaintiff's burden that the clinically proven claims are false or misleading. That's a similar hypothetical. They're not... No, I think it's different. They're not claiming that you should have had stronger support for your claims. They're claiming that your claim that you have a statistically significant survey is false. That's... I think that's their claim. And so my question is, can't they make that claim? It may be that you can come up with a statistically significant survey, but you've made a claim that you have one that is statistically significant, and they're saying that claim is false. Our statistician says so. That's what I'm focusing on here, and that's why I'm having some difficulty with you saying what they really want is substantiation. They don't want you to substantiate their claims. They think you've... They think they're just flat-out false, and they want to prove it. If they wanted to prove it, they would have had studies that proved it. They don't. Can't they prove it through statistical analysis? No. They have to... Again, in the context of consumer protection, not FTC, they actually have to have studies proving the falsity. They can't quibble with statistical methods, or the number of patients, or the statistical significance of the study that we conduct. Otherwise, every case, they could hire a pre-litigation expert like they did in this case, and to poke holes in the study that's conducted. In every case... I'm going to give you enough time here to finish your argument. Let me change the hypothetical        they gave it to 10 people, and they gave it to 10 people, and they gave it to 10 people, and they gave it to 10 people, and they gave it to 10 people, and then you went and advertised that you had a study that showed that you had a statistically significant study that showed increase. And they said, we've gotten their study, and we looked at the methodology, and this is a false claim. Because nobody had an increase in testosterone levels. Do they then have to do their own study under that circumstance? You're saying if we had a study       their own study? You can do their own study. You can determine that it's false. They can determine that it's false, and then you go and advertise that there was an increase in testosterone. Do they do their own study to show that it's false? You're saying we have a study that says no effect whatsoever, but we've got an expert that's on the take or something, and  comes up with a completely different decision? No, you don't even have an expert. You've got a study that shows no effect, and you decide to advertise it as a study that shows effect. And they get a hold of the     They would still need a study. Now, I'm not saying that that's a bad thing. I'm just saying that that's a bad thing. I'm not saying that that's a bad thing. They need to go out and conduct their own study to show that your product doesn't work? Absolutely. Even though your own study showed it didn't work? Well, certainly at the trial court level, they certainly need to do that. At the motion-dismiss days, if you've got reasonable experts under the NRA GNC decision, for example, if you've got reasonable experts that disagree, the claim can be dismissed as well for lack of substantiation. I've monopolized some of your   up what you wanted to say. I appreciate that. I will, based on your discussion, I'm going to give you a couple more minutes to finish up what you wanted to say. Your Honor's cues on the RICO claim, I will bypass that. Quite frankly, I think the Court is absolutely right that this is just simply innocuous, competitive behavior by retailers. If every time competitors were to, they could be sued in RICO in every single case based upon the allegations by appellants. So I'm going to take the cue from the Court on the RICO allegation unless you     I have none. I have none. I have none. I have none. I have none. I have none. I have none. I have none. I have none. I have none.       I have none. I have none.  Prepare to answer questions about that. There was a recent decision a month ago and the Haines. I had a question for you on the seal or a claim. Assuming that the demand wasn't made by an appropriate party here because he wasn't ending it didn't up and up being up. It doesn't the California law rather clearly say you shouldn't dismiss with prejudice. You should you should allow amendment to bring in a proper party and actually, no, on that ground, you have to. You can dismiss with prejudice. It's not an amendable claim. Is that right? I believe so. Yeah, it cannot be cured by amendment. What are you referring to? Well, it's civil code section 1782. Yeah, I'm looking at the 1782. And it says I'm looking at the Morgan versus AT&T Wireless Services case, which says dismissal with prejudice is improper. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements. So why shouldn't the judge have dismissed it the way AT&T this Morgan case says? You mean if they were to send out a notice now? Right. I think Morgan involved the wrong person sending a notice. And the court said what you should do under California law is not dismiss with prejudice, but dismiss on the condition that they have 30 more days or whatever to file a proper notice. Well, I don't know that case in particular. It's my understanding that specific to 1782, that is not curable by amendment. I will rely upon the authority Your Honor has. It's a case I made in the briefs. We argued it in our briefs, so I'm going to defer to what's in our briefs. I'm not up on the issue of whether. My understanding was amendment was not permitted on this particular claim under the civil code. But I'll defer to the authority that we cite in our briefs on that issue. Okay. Anything else before we have some time for rebuttal? No, Your Honor. Thank you very much. Judge Gould, anything else? No, thanks. Why don't we give him five minutes for rebuttal here. Thank you. First, addressing the decision in Cammie from the District of Massachusetts, Professor, the expert report was not in front of the court. There were some allegations in the complaint about the report. That's why I asked your opponent. I understood that it was not attached and incorporated into the complaint. It was not. And the court in that case did not acknowledge or deal with the distinction that's been the focus of the argument here between a so-called establishment claim that something has been proven versus a claim that something is merely effective. What you're saying is you think the judge was wrong. Yes. Okay. Yes. But the judge focused on the claim. You just think she reached the wrong result. It may have been a failure of advocacy in front of that court or to point out the distinction. Well, let me ask the question differently. If that decision is correct, don't you lose? Well, as Your Honor just noted, they did not have the same record. She did not have our expert report before her, so certainly that would be a grounded distinction. Also, I would say the argument made by the plaintiffs there went to a number of claims where we're just focusing on the claim of clinically proven. And so the distinction may have been lost by the court there, but obviously if that court is correct that a claim that something has been clinically proven, you have to submit your own study, basically the same argument that Your Honor was having with my opposing counsel. I guess what I'm suggesting is that maybe the district court there was correct, that you need to do more than nitpick the report through an expert. You need to have a plausible allegation that it's wrong. All that your expert says is based on the report they did, I don't think the results are statistically significant. You haven't suggested in this case that you have any evidence that there are claims that this increases free testosterone are wrong, have you? That's not been a part of our case. We've just focused on the clinically proven allegation because that boils down to mathematics. And as Your Honor is properly focused on, the question of statistical significance, that is mathematics. It's not vague and ambiguous claims about something improving your sex life. So if in fact, let's assume the study was mathematically flawed, but they are selling a product that increases free testosterone, do you have a claim? Well, how would you know? If it's not clinically proven, you don't know that. I'm asking you, let's assume you went to trial and they came in with evidence that this increases free testosterone. You lose, don't you? I don't know what that evidence would be but clinical proof. You can never, I've done medical research. Now you're saying what they need to do at trial is come up with clinical proof. Now this sounds like a substantiation claim. No, Your Honor. What I'm saying is we have challenged their claim that something has been clinically proven. You never know. I understand your claim. Your claim is that they've made a false claim that it's been clinically proven. How do they defend against that claim? By showing that it has been clinically proven, by showing that their study in fact constitutes clinical proof, by showing that it is statistically significant because that is the definition of whether something has been clinically proven. There's an entire section in there. I agree with what you're saying. And therefore, it sounds to me like you're asking them to substantiate their claim. No. Again, this gets into the distinction between establishment and nonestablishment claims. Basically, you're saying they could walk in and say celery cure, it's been clinically proven that celery cures cancer with, you know, no basis for it whatsoever. And unless I've got a study that shows celery does not cure cancer, we have no claim. I mean, it becomes boundless what someone can say if you ignore the distinction, which is what Your Honor is proposing, between establishment and nonestablishment claims. There are seven cases, you know, adjudicating claims under the CLRA, the UCL, the false advertising law, that all recognize that distinction. McCrary violations, Hughes v. Esther C., Ricos v. Proctor & Gamble, Mori v. Next Food, Zachariah v. Gerber Products, and the King-Bio case, National Council on Health Fraud v. King-Bio, all recognize this distinction. Your Honor is proposing that it be ignored. Let me ask you one other question, and it's not briefed in this case. The basis for federal jurisdiction here was? The consumer legal remedy, I'm sorry, the Class Action Fairness Act and the RICO claim. Right. And the judge never addressed the basis, never addressed the CAFRA basis for jurisdiction. He didn't do the analysis of the amount of money, et cetera, et cetera, because there was a federal RICO claim. That is correct, but... If we were to hold that the judge correctly dismissed the federal RICO claim, would the judge then have to go through the CAFRA analysis to see whether there was federal jurisdiction? Well, they certainly didn't raise it, and I think we've pleaded enough to get over it. It's subject matter jurisdiction, so it can be raised at any time. Out of a product category in which GNC recorded I think it's something like $768 million in sales, this was their number one thing, you know, and it's been sold for years now. So I think we will plausibly get over the $5 million threshold and the number of class members. This is like their number one product in the category that's their number one category, and there's 19 of them at issue in this case. So if we have to litigate that issue, we'll litigate it, but I think we get over the $5 million threshold. It wasn't discussed in the briefs. I was frankly hoping we could get the California courts to do it. Let me ask you a question. Do we have jurisdiction if we toss the RICO claim, can we make the CAFRA decision? No, I don't think, you know, that certainly wasn't briefed below, and I'll call your attention to some of the allegations in the complaint that go to the size of this. You just said no. Are you telling us that this court cannot make the decision that there's jurisdiction under CAFRA? I'll be honest, I hadn't really thought this through until his Honor mentioned this. It's not something that's been raised by anyone, and I would never, I should not presume to tell this court what it can and cannot do. What I will say, if you look at paragraph 131 of our complaint, that's an excerpt to the record 70, and paragraph 132, they've got $765 million a year in sales, sports nutrition products, and these are the best selling products within that category. Counsel, so I don't really have any question, given the facts here, that the district court could have made, probably could have made a proper decision here under CAFRA. My question was aimed at if he didn't, which in this case he didn't because of RICO, if he just didn't address it, and if we think we need to reverse on RICO, do we have to just remand it to the district court to consider jurisdiction, or do we have authority as an appellate court to look at CAFRA and make our own decision? Well, your Honor, I think certainly the district court would have supplemental jurisdiction under the supplemental jurisdiction statute, even after dismissal of the RICO claim, that would be discretionary. And we know this judge didn't want to hear any of these claims, so my guess is if he had discretionary jurisdiction, he wouldn't hear them. I have to say, your Honor, this is kind of, I'm blindsided by this, I haven't, you know, normally I get a chance to brief issues before they're decided and brief them twice before they're decided at the appellate level, and there was no call for this sort of argument below, and so we haven't. But I think it's clear, the facts are clear, that there's over $5 million worth of this stuff that's at issue, and there's certainly class members from other states. One of them is a plaintiff, I mean, we've got defendants from all over, we have the minimal diversity, and certainly, you know, I would like a chance to brief it before it was decided, if that was going to be the basis of. I'll guarantee you we're not going to dismiss your case for absence of jurisdiction without giving you a chance to brief it. Judge Gould's question was quite different. Judge Gould's question was, is that an issue in the first instance for us, for us or for the district court? You know, I read the guidelines for oral arguments, it says when you don't know something, you should say so, I'm going to confess I don't know. If we feel we need to have my question answered to make a decision, we'll send a supplemental order out for briefing on that, which our general orders require that if we were going to decide something on a basis not in the briefs, we should let the parties brief it. Very eloquent today in answer to a question that no one's confronted before. Thank you, Your Honor. And let me add to what Judge Gould said, if you asked me that question, my answer would be I don't know either. So it's not that we all know. And if somebody knows, somebody knows they can submit a 28-J letter. Aren't there enough cutting-edge issues for the court to deal with here without interjecting its own? All right. Why don't you wrap up? We've given you some extra time. I'll give you one more sentence or so. Well, in terms of what happens if it goes back, I mean, this is obviously a very delicate area. The court itself has made certain comments about what the judge did being inappropriate here. And the court has said repeatedly that, you know, this judge may have problem putting out of mind, you know, determinations he's made. He said, you know, this should be dismissed. He didn't even confront me with an oral argument to allow me to respond to it. Then he said, I'm so sure I'm right, I'm not giving you leave to amend. Assume all those are legal errors. What do we have here that shows that this judge would be unable to follow instructions in a remand? I mean, what you're basically saying, and I understand it, is, well, look at these other cases where there are much more egregious facts, and therefore this judge ought to never be allowed to deal with a remand. This is a pretty plain vanilla case. It's a motion to dismiss. He granted it. He never yelled at you in oral argument. There wasn't an oral argument. He didn't treat you badly, didn't exhibit hostility to you. He obviously doesn't like your case as a legal matter. But if we were to take this case away from the judge on remand, wouldn't we have to take every case we remanded to this judge away from him? Well, the judge, the district judge had a chance to correct course when we put squarely in front of him the unredacted report showing he was absolutely wrong. He said you couldn't possibly allege anything else, and we put it in front of him. All you're saying is that he erred in denying your motion for reconsideration, if you will. Tell me what in this record demonstrates that this judge can't fairly adjudicate this case, other than the fact that he ruled against it. Well, I think my opposing counsel, when asked that, he's sure if he gets it back, he's just going to dismiss it again. Because he thinks he should have the first time. And I'm going to be back here in another three years. And I've noticed in the decision that sometimes it takes a six-year delay before the court reassigns it. He has to be reversed twice. I was hoping this wasn't one of those cases. I'm asking you a very direct question, and I understand this is a sensitive area, but you're the one who's requesting this. What do we have here, other than the fact that the judge ruled against you? And you think, and I happen to think in some parts he may have correctly ruled against you, in some parts he may not have. You admit, for example, that on alter ego you didn't sufficiently plead alter ego. So what do you have beside the fact that the judge ruled against you that would authorize us to take what we call the extraordinary step of reassigning it? I think he became an advocate for the other side. He made an argument they did not make for themselves. He acted as an expert in the case, as a statistician. This transcript will show your honor saying he basically acted as a statistician for the other side and tried the case in his head, and he won. Okay. With that, I want to thank both sides for the excellent briefs and argument in this case. The case is submitted, and we are adjourned.
judges: Gould, Hurwitz, Restani